```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ROBERT G. CONRAD,**

       **Plaintiff,**

**v.**  //  **CIVIL ACTION NO. 1:17cv53**
                                      (Judge Keeley)

**OCWEN LOAN SERVICING, LLC;**
**U.S. BANK NATIONAL ASSOCIATION,**
**AS TRUSTEE FOR C-BASS MORTGAGE**
**LOAN ASSET-BACKED CERTIFICATES,**
**SERIES 2007-SP2; and DAKOTA**
**HINTERER,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]

On February 27, 2017, the plaintiff, Robert G. Conrad ("Conrad"),[1] filed a complaint in the Circuit Court of Doddridge County, West Virginia ("Circuit Court"), against the defendants, Ocwen Loan Servicing, LLC ("Ocwen"); U.S. Bank National Association, as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-SP2 ("U.S. Bank"); and Dakota Hinterer ("Hinterer") (Dkt. No. 1-1 at 5). On April 7, 2017, Ocwen and U.S. Bank removed the case to this Court, arguing that Hinterer, the only non-diverse defendant, was fraudulently joined to defeat diversity (Dkt. No. 1). After considering Conrad's motion to remand (Dkt. No. 6), the Court concludes that it lacks subject matter jurisdiction. Therefore, it **GRANTS** Conrad's motion and **REMANDS** this case to the Circuit Court.

---

[1] On July 20, 2017, Conrad's attorney filed a suggestion of death, advising that Conrad died on June 21, 2017 (Dkt. No. 19).

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

**I. BACKGROUND**

In 1996, Conrad purchased his home for $73,000 with a loan held by U.S. Bank. After Conrad refinanced the home in 2000, Litton Loan Servicing, LP ("Litton"), began servicing the loan. Thereafter, Conrad applied for a loan modification, which Litton approved. By this, Conrad lowered his interest rate from 8.5% to 3.5% (Dkt. No. 1 at 6-7).

Before the agreement was memorialized, Ocwen purchased Litton. After it began servicing Conrad's loan, it "refused to honor the agreement that Litton provided."[2] Instead, on several occasions, Ocwen instructed Conrad to reapply for loss mitigation assistance and to stop making payments until it finalized his loan modification. Most recently, in August 2016, Conrad again applied for loss mitigation assistance because Ocwen had not responded to his previous communications. Id. at 7-8.

On January 18, 2017, Conrad received a letter dated January 11, 2017, in which Ocwen denied his request for loss mitigation assistance. It based its denial in part on the falsehood that Conrad had failed to provide an application before 2017. An individual also

---

[2] On December 16, 2013, Ocwen entered into a settlement agreement and consent order with State Mortgage Regulators, including West Virginia, which requires it to provide appropriate loss mitigation options (Dkt. No. 1-1 at 6-7).

2

**CONRAD V. OCWEN LOAN, ET AL.**                                        **1:17CV53**

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

stopped at Conrad's house to notify him that his property would be sold at foreclosure later that day. Hinterer, whose family is involved in the oil and gas business, purchased the home at the foreclosure sale. Id. at 9. The contract of sale establishes that Hinterer purchased the property for $171,063.11, and paid $17,000.00 as a deposit (Dkt. No. 18-1).[3]

In his complaint, Conrad alleges that Ocwen failed to comply with industry standards and commercially reasonable business practices regarding loss mitigation applications, and that it never actually evaluated his application or provided him a right to appeal its denial (Dkt. No. 1-1 at 9). He further claims that, based on Ocwen's representations, he did not pursue other options, such as selling the property, refinancing, or obtaining assistance.

---

[3] Under West Virginia law, "[a]fter the execution of a valid contract of sale and before the legal title passes by deed, the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor." Timberlake v. Heflin, 379 S.E.2d 149, 155 (W. Va. 1989) (quoting Maudru v. Humphreys, 98 S.E. 259, 260 (W. Va. 1919)) (reasoning that a contract for sale of land creates an enforceable "equitable title" in property); see also In re Bardell, 361 B.R. 468 (N.D.W. Va. 2007) (noting that equitable title passes upon completion of a contract for sale and that West Virginia "has not protected the residents of this State with a statutory period of redemption following a foreclosure sale"). Having executed a contract of sale, Hinterer is thus regarded as holding equitable title to Conrad's property, a fact that neither party disputes (Dkt. Nos. 8 at 5-6; 10 at 3-4; 16 at 8).

**CONRAD V. OCWEN LOAN, ET AL.**                                             **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

Therefore, Conrad allegedly could not avoid foreclosure and suffered "economic loss, annoyance and inconvenience, stress and worry, and fear of loss of his home." Id. at 10. Conrad seeks relief based on various violations of the West Virginia Consumer Credit and Protection Act, as well as common law claims for tortious interference, fraud, "equity abhors a forfeiture," and estoppel. Id. at 10-15. Only the latter two causes of action are asserted against "all defendants." Id. at 14-15.

On April 7, 2017, Ocwen and U.S. Bank ("the removing defendants"), both diverse from Conrad, removed the case to this Court (Dkt. No. 1). They aver that Hinterer, a West Virginia resident, was fraudulently joined to defeat diversity because Conrad "failed to allege any wrongdoing or state a valid claim against him." Id. at 4. On April 14, 2017, the removing defendants filed their answer to the complaint (Dkt. No. 5). Thereafter, on May 8, 2017, Conrad moved to remand the case to state court, contending that the removing defendants "have failed to satisfy their burden in the notice of removal that Defendant Hinterer has been fraudulently joined or that he [is] only a nominal party" (Dkt. No. 6-1 at 1). At a scheduling conference on June 20, 2017, the Court heard argument on the motion to remand (Dkt. No. 12), and directed

4

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

the parties to file supplemental briefs by June 30, 2017 (Dkt. No. 13).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." See also King v. Marriott Int'l, Inc., 337 F.3d 421, 424 (4th Cir. 2003). Nonetheless, "federal courts, unlike state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations," Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008), and federalism counsels that removal jurisdiction should be strictly construed. Palisades Collections LLC v. Shorts, 552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)).

"The burden of establishing federal jurisdiction is placed upon the party seeking the removal." Mulcahey v. Columbia Organic Chems., Inc., 29 F.3d 148, 151 (4th Cir. 1994). "All doubts about the propriety of removal should be resolved in favor of retaining state court jurisdiction," and thus remanding a case to state court. Vitatoe v. Mylan Pharm., Inc., No. 1:08cv85, 2008 WL 3540462, at *2 (N.D.W. Va. Aug. 13, 2008) (citing Hartley v. CSX Transp., Inc., 187

**CONRAD V. OCWEN LOAN, ET AL.**                                    **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

F.3d 422, 425 (4th Cir. 1999)). The Court is limited in its consideration to the facts on the record at the time of removal. See Lowrey v. Al. Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007).

### III. DISCUSSION

"The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." 28 U.S.C. § 1332(a). This provision has been consistently interpreted "to require complete diversity of citizenship of each plaintiff from each defendant." Rosmer v. Pfizer Inc., 263 F.3d 110, 123 (4th Cir. 2001) (Motz, J., dissenting) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)).

Nonetheless, naming a non-diverse defendant does not necessarily defeat diversity jurisdiction. There are "three exceptions to the strict requirement of diversity: (1) a court may ignore the citizenship of nominal parties; (2) a court may dismiss parties fraudulently joined; and (3) a court may realign the parties based on their true interests." Chamberlain v. 37th Parallel Properties Inv. Grp., LLC, No. 3:15-cv-00080, 2015 WL 1954674, at *2 (E.D. Va. Apr. 29, 2015). Although Hinterer is non-diverse, the removing defendants argue that he is either fraudulently joined or

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

merely a nominal party (Dkt. No. 1 at 4). Neither argument is convincing.

**A. Fraudulent Joinder**

The doctrine of fraudulent joinder "effectively permits the district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). In the Fourth Circuit, "[t]he party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (quoting Hartley, 187 F.3d at 424).

"The removing party must show either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Id. (internal quotation and citation omitted). Under the "no possibility" standard, "a plaintiff's claim against a non-diverse defendant 'need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.'" Id. (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 233 (4th Cir. 1993)).

**CONRAD V. OCWEN LOAN, ET AL.** 1:17CV53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

A mere "glimmer of hope" suffices, which is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Mayes, 198 F.3d at 466 (quoting Hartley, 187 F.3d at 424); see also Boss v. Nissan N. Am., Inc., 228 F. App'x 331, 335 (4th Cir. 2007) (unpublished decision). "[T]he court is not bound by the allegations of the pleadings, but may instead 'consider the entire record . . . .'" AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).

Here, Conrad names Hinterer in his claims for "equity abhors a forfeiture" and "estoppel." The question presented is whether Conrad might be entitled to equitable relief from Hinterer, such that Hinterer is not fraudulently joined regardless of whether Conrad's claims form freestanding causes of action against him.[4] The

---

[4] They likely do not. "Equity abhors a forfeiture" is merely a principle invoked by West Virginia courts to describe the preference for alternative remedies. See Bailey v. Savage, 236 S.E.2d 203, 206 (W. Va. 1977); Warner v. Haught, Inc., 329 S.E.2d 88, 95 (W. Va. 1985). District courts in West Virginia have thus not viewed such causes of action as viable or freestanding. See, e.g., Daugherty v. Equifax Info. Servs., LLC, 5:14-cv-24506, 2015 WL 6456572 (S.D.W. Va. Oct. 26, 2015); Mullins v. GMAC Mortg., LLC, No. 1:09cv704, 2011 WL 1298777, at *6 (S.D.W. Va. Mar. 31, 2011); Kesling v. Countrywide Home Loans, Inc., No. 2:09-588, 2011 WL 227637, at *5 (S.D.W. Va. Jan. 24, 2011); Clendenin v. Wells Fargo Bank, N.A., 2:09cv557, 2009 WL 4263506, at *5 (S.D.W. Va. Nov. 24,

8

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

Fourth Circuit's decision in Mayes v. Rapoport illustrates the proper approach to analyzing this question. 198 F.3d 457.

In Mayes, a tenant's commercial lease gave her the right of first refusal to match any third party's offer to purchase the leased property from her landlords. Id. at 458. During the lease term, the landlords received an offer to purchase the property, which they unconditionally accepted without first presenting it to their tenant under her right of first refusal. Although the tenant expressed a willingness to purchase the property "under the same terms and conditions as those offered to" the third party, the landlords rejected her offer. Instead, the landlords closed their sale of the property to the third party. Id. at 459.

When the tenant, a Maryland resident, sued her landlords, District of Columbia residents, for breach of contract, the landlords removed the case to the District of Maryland on the basis

---

2009). Likewise, even assuming that estoppel may be employed as a cause of action in this circumstance, see Staats v. Bank of Am., N.A., No. 3:10cv68, 2010 WL 10899255, at *12 (N.D.W. Va. Nov. 4, 2010), Conrad failed to make any allegations in support of such a claim against Hinterer, instead directing his allegations against Ocwen (Dkt. No. 1-1 at 14-15). For instance, there is no indication that Hinterer made a false representation or concealed a material fact, much less that any misrepresentation was made knowingly with the intent that Conrad act upon it. See Syl. Pt. 3, Folio v. City of Clarksburg, 655 S.E.2d 143 (W. Va. 2007); see also Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015) (failure to allege any elements of a fraud claim).

9

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

of diversity. Id. at 459 & n.4. Before the landlords answered the complaint, however, the tenant filed an amended complaint adding the purchaser, also a Maryland resident, as a defendant. Nonetheless, the district court determined the tenant "ha[d] failed to establish a claim against" the purchaser, dismissed him as fraudulently joined, and dismissed the tenant's claims against her landlords on the merits. Id. at 460.

On appeal, the Fourth Circuit analyzed diversity jurisdiction by considering whether the purchaser had been fraudulently joined.[5] Significantly, the tenant's amended complaint claimed that she was "entitled to specific performance, i.e., to get the property itself from" the purchaser. Therefore, the claim for specific performance against the purchaser required the tenant to prove "(1) that [her] right-of-first-refusal was breached; and (2) that she [was] entitled to the remedy of specific performance against" the purchaser. Id. at 464.

---

[5] The court noted that the doctrine of fraudulent joinder need not be applied when a defendant challenges post-removal joinder of a non-diverse party, but it reasoned that "the fraudulent joinder doctrine can be yet another element of the district court's 'flexible, broad discretionary approach' to resolving a post removal question of whether a nondiverse defendant should be joined under § 1447(e)." Mayes, 198 F.3d at 463 (quoting Gum v. Gen. Elec. Co., 5 F. Supp. 2d 412, 414 (S.D.W. Va. 1998)).

**CONRAD V. OCWEN LOAN, ET AL.**                                    **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

After concluding the tenant had sufficiently alleged that the landlords breached her right of first refusal, the Fourth Circuit discussed the purchaser's joinder as follows:

> If the [landlords] breached [the tenant's] right-of-first-refusal, then there is a possibility that she can obtain specific performance against [the purchaser]. "[W]here a contract for the sale of realty is fair, reasonable and certain, it is as much a matter of course for a court of equity to decree specific performance as it is for a court of law to award damages for its breach." Manning v. Potomac Elec. Power Co., 230 Md. 415, 187 A.2d 468, 472–73 (1963). A Maryland state court could well order specific performance, depending on, inter alia, [the purchaser's] knowledge and involvement in the breach. Although there may be a substantial burden on [the tenant] to establish entitlement to specific performance, "there need be only a slight possibility of a right to relief" to defeat a claim of fraudulent joinder. Hartley, 187 F.3d at 426. We believe, at the very least, there is, in the Hartley sense, a "glimmer of hope" for such relief in this case. Id.

Id. at 466. Therefore, the court concluded that the landlords had not carried their heavy burden to establish that the purchaser was fraudulently joined. Id.

There simply is no principled distinction between the tenant's possibility of obtaining specific performance from the purchaser in Mayes and Conrad's possibility of obtaining equitable relief from Hinterer in this case.[6] Among other things, Conrad claims that 1)

---

[6] In stark contrast to the Fourth Circuit's analysis in Mayes, the removing defendants would have the Court end its jurisdictional

11

**CONRAD V. OCWEN LOAN, ET AL.**                              **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

Ocwen violated the West Virginia Consumer Credit and Protection Act, 2) Ocwen tortiously interfered with Conrad's loan contract, 3) Ocwen acted fraudulently, and 4) he is entitled to retain his home as equitable relief (Dkt. No. 1-1 at 10-15). Critically, granting Conrad such equitable relief would necessarily involve setting aside the foreclosure sale and extinguishing Hinterer's equitable interest in the property. Much like Mayes, Conrad's claim for equitable relief from Hinterer depends on whether he can prove 1) a possible claim against Ocwen and 2) that the claim might also entitle him to an equitable remedy that includes Hinterer's interest. See Mayes, 198 F.3d at 464. Conrad's complaint establishes both of these elements.

First, at the very least, Conrad can possibly establish a cause of action against Ocwen for fraud. "The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was

---

inquiry with whether there is a freestanding cause of action pleaded against Hinterer (Dkt. No. 16 at 3, 8). In support, the removing defendants point to various cases appearing to cabin the relevant inquiry, but that did not confront the unique circumstances present here and in Mayes. See, e.g., Weidman, 776 F.3d at 218; Ronald Lane, Inc. v. Antero Res. Appalachian Corp., No. 1:10CV137, 2011 WL 3102116, at *8 (N.D.W. Va. July 25, 2011) ("[T]he only question is whether the plaintiffs have any possibility of establishing a cause of action against RLS Consulting." (emphasis added)); Ashworth v. Albers Med., Inc., 395 F. Supp. 2d 395, 403 (S.D.W. Va. 2005) ("The court's inquiry thus is limited to whether plaintiff conceivably may state a claim . . . ." (emphasis added)).

**CONRAD V. OCWEN LOAN, ET AL.**                                    **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Folio, 655 S.E.2d 143, Syl. Pt. 5 (internal citation and quotation omitted). Count Five of Conrad's complaint alleges that Ocwen materially and falsely represented that it would review Conrad for loss mitigation assistance by processing his application, and that Conrad "had to stop making payments during the loss mitigation application process" (Dkt. No. 1-1 at 12-13). According to Conrad's allegations, he detrimentally relied on these misrepresentations "by not pursuing other options for assistance," resulting in "his continued arrearage, financial struggles, and fear of foreclosure." Id. at 13.

Second, if Conrad's claim of fraud is successful, he might be entitled to equitable relief from Hinterer. West Virginia courts have long enjoyed authority to set aside foreclosure sales under the proper circumstances, as they have "applied common law principles of equity to permit an action to set aside a foreclosure sale." Sostaric v. Marshall, 766 S.E.2d 396, 402 (W. Va. 2014) (quoting Fayette Cty. Nat'l Bank v. Lilly, 484 S.E.2d 232, 239-40 (W. Va. 1997)). Although the plaintiff's burden is onerous, a West Virginia court may set aside a trustee sale due to fraud. Syl. Pt. 3, Dunn

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

v. Watson, 566 S.E.2d 305 (W. Va. 2002) ("A party who seeks to have a trustee sale set aside for irregularity, want of notice, or fraud has the burden of proving his contention, it being presumed, in the absence of evidence to the contrary, that the sale was regular."). Moreover, such judicial action is undertaken without regard for the purchaser's culpability. See, e.g., Hafer v. Skinner, 542 S.E.2d 852 (W. Va. 2000) (lack of trustee authority to conduct sale); Syl. Pt. 3, Rife v. Woolfolk, 289 S.E.2d 220 (W. Va. 1982) (inadequate sale price); Atkinson v. Washington & Jefferson Coll., 46 S.E. 253 (1903) (various failures to comply with a deed of trust); Corrothers v. Harris, 23 W. Va. 177, 182 (1883). "[A]t the very least, there is . . . a 'glimmer of hope' for such relief in this case," Mayes, 198 F.3d at 466, and Hinterer thus was not fraudulently joined.[7]

---

[7] Because the Court concludes that Hinterer was not fraudulently joined, it need not reach Conrad's related argument that Hinterer is a necessary and indispensable party under Fed. R. Civ. P. 19. Some courts hold that such parties cannot be deemed fraudulently joined even if no cause of action is stated against them. See, e.g., Zhaoyin Wang v. Beta Pharma, Inc., No. 3:14-CV-01790, 2015 WL 5010713, at *5 n.7 (D. Conn. Aug. 24, 2015); Audi of Smithtown, Inc. v. Volkswagen of Am., Inc., No. 08-CV-1773, 2009 WL 385541 (E.D.N.Y. Feb. 11, 2009). The Court notes that the Fourth Circuit may counsel such an approach to fraudulent joinder, given the inverse proposition that "non-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity." Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 691 (4th Cir. 1978). Moreover, the Fourth Circuit's consistent references to a plaintiff's "right to relief" suggests that those parties necessary to afford complete relief under Rule 19 should not be

**CONRAD V. OCWEN LOAN, ET AL.** 1:17cv53

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

**B. Nominal Party**

Although diversity jurisdiction requires that the parties be completely diverse, Rosmer, 263 F.3d at 123, courts "must consider only 'real and substantial parties to the controversy' and must disregard the suit's 'nominal or formal parties.'" Hughes v. Wells Fargo Bank, N.A., 617 F. App'x 261, 263-64 (4th Cir. 2015) (unpublished decision) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)); see also Heller v. TriEnergy, Inc., 877 F. Supp. 2d 414, 424 (N.D.W. Va. 2012). "Nominal means simply a party having no immediately apparent stake in the litigation either prior to or subsequent to the act of removal. In other words, the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 260 (4th Cir. 2013).

As an alternative to their fraudulent joinder argument, the removing defendants contend Hinterer is a mere nominal party. See Wygal v. Litton Loan Servicing LP, No. 5:09-cv-00322, 2009 WL 2524701, at *5 (S.D.W. Va. Aug. 18, 2009) ("[A] party generally cannot be both fraudulently joined and nominal. Fraudulent joinder

---

dismissed as fraudulently joined.

**CONRAD V. OCWEN LOAN, ET AL.**                                          **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

entails that the party serves no role in the litigation, whereas a nominal party may be proper party to the litigation, albeit one without any real interest in the outcome."). More particularly, they analogize Hinterer's equitable interest to that of a substitute trustee, which is often considered nominal because it holds title to property for the sole benefit of the real parties in interest. See, e.g., Mansfield v. Vanderbilt Mortg. & Fin., Inc., 29 F. Supp. 3d 645 (E.D.N.C. 2014) (reasoning that a trustee "will not be affected in any reasonably foreseeable way"); Sherman v. Litton Loan Servicing, L.P., 796 F. Supp. 2d 753, 761 (E.D. Va. 2011) (noting that a trustee "has no substantive role in this matter, and would be 'clearly a nominal party at best'"); Yount v. Shashek, 472 F. Supp. 2d 1055, 1061-62 (S.D. Ill. 2006).

Even by this metric, Hinterer is far from nominal. He clearly holds equitable title for his own benefit rather than for any other party to the litigation. Under Hartford's straightforward "key inquiry," Hinterer has an "immediately apparent stake in the litigation" because, as discussed, the equitable relief that Conrad seeks will affect Hinterer's ability to enforce his interest in a "reasonably foreseeable way." Hartford Fire, 736 F.3d at 260.[8]

---

[8] Hinterer has not appeared in this case, and the removing defendants assert that this is probative evidence that he is a

**CONRAD V. OCWEN LOAN, ET AL.**                                          **1:17cv53**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 6]**

Therefore, Hinterer is not a nominal party whose citizenship the Court may disregard.

## IV. CONCLUSION

The removing defendants have not met their burden to demonstrate that Hinterer is either fraudulently joined or a nominal party. Therefore, the Court **GRANTS** Conrad's motion to remand (Dkt. No. 6) and **REMANDS** this case to the Circuit Court of Doddridge County, West Virginia.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: July 26, 2017.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE

---

nominal party (Dkt. No. 16 at 5). Although a party's failure to appear is a relevant factor, Kidd v. Gilfilen, 170 F. Supp. 2d 649, 651-52 (S.D.W. Va. 2001), the Fourth Circuit's "key inquiry" focuses on how the litigation will affect the non-consenting defendant. See Hartford Fire, 736 F.3d at 260.